UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO ALVAREZ MENDOZA,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND,<br><br>Respondent. | Case No.: 21-cv-1968-LL-MDD<br><br>**ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 18]** |

Pending before the Court is Respondent Merrick B. Garland's Motion for Summary Judgment. ECF No. 18. Petitioner has opposed the Motion (ECF No. 21), and Respondent has replied (ECF No. 22). The Motion has been fully briefed and is suitable for submission without oral argument. For the reasons set forth below, the Motion is **GRANTED.**

## I. BACKGROUND

### a. Procedural Background

On June 11, 1990, Petitioner was convicted of violating California Health and Safety Code section 11360(a), for the sale of marijuana. ECF No. 18-2 at ¶ 2; ECF No. 18-11 at 2. Accordingly, the former Immigration and Naturalization Service (INS) charged Petitioner with deportability under former section 241(a)(2)(A)(iii) of the Immigration and

Nationality Act for his conviction. ECF No. 18-11 at 2-3. On March 3, 1992, the INS filed an order to show cause articulating Petitioner's charge of deportability with the United States Immigration Court in Los Angeles, California. *Id.* at 3.

Petitioner's proceedings were "administratively closed" after he failed to appear for his December 21, 1992, deportation hearing. *Id.* On March 1, 2019, the Department of Homeland Security (DHS) re-calendared the proceedings in the Adelanto Immigration Court and detained Petitioner in the Adelanto ICE Processing Center. *Id.* On June 18, 2019, DHS filed an additional charge of deportability under section 241(a)(2)(B)(i) of the Immigration and Nationality Act, alleging that that Petitioner was also convicted, on August 8, 1988, of violating California Health and Safety Code section 11360(a) for possessing cocaine. ECF No. 18-2 at ¶ 46; ECF No. 18-11 at 2. In October 2019, Petitioner was moved to the Otay Mesa Detention Center, and his case was also moved to the Otay Mesa Immigration Court. ECF No. 18-11 at 3. During his proceedings, Petitioner claimed that he is a United States citizen and sought relief under former section 212(c) of the Immigration and Nationality Act. *Id.* at 3-4.

On September 1, 2020, U.S. Immigration Judge James DeVitto found that Petitioner failed to meet his burden of demonstrating he was a United States citizen and declined relief under former section 212(c). ECF No. 18-2 at ¶ 8; ECF No. 18-11 at 11-12. Accordingly, the Otay Mesa Immigration Court ordered Petitioner to be deported back to Mexico. ECF No. 18-11 at 13. On July 21, 2021, the court order was appealed to the Ninth Circuit Court of Appeals, and the appellate court granted a temporary stay of removal. ECF No. 1-4. On October 20, 2021, Respondent filed an Unopposed Motion to Transfer the Citizenship Claim to the United States District Court for the Southern District of California. ECF No. 1-15. On November 18, 2021, the Ninth Circuit Court of Appeals granted Respondent's motion and transferred this case to the present Court, pursuant to 8 U.S.C.

section 1252(b)(5)(B)[1], to review Petitioner's citizenship claim de novo. ECF No. 1; ECF No. 18-2 at ¶ 11.

### b. Factual Background

Petitioner was born in Mexico. ECF No. 18-2 at ¶ 1. Petitioner claims to have acquired United States citizenship at birth from his mother Sara, who Petitioner claims acquired United States citizenship at birth from her mother, Elena. ECF No. 18-1 at 7; ECF No. 21 at 2.

Elena was born on June 26, 1923, in Merced, California. ECF No. 18-2 at ¶ 7. Thereafter, Elena moved back to Mexico with her father and lived there until 1965. *Id.* at ¶ 12. Elena's father was a "Bracero" or seasonal worker in the United States; while he worked in the United States, his children, including Elena, would stay with him. *Id.* at ¶ 13. Elena's father worked as a Bracero for an unspecified amount of time. *Id.*

Elena married her first husband Liborio Vargas in Mexico. *Id.* at ¶ 14. Elena gave birth to four children with Liborio in Mexico starting in 1943. *Id.* at ¶¶ 14-15. Elena was married to Liborio until he was struck by lightning and died. *Id.* at ¶ 16.

A man named Odilon Alvarez kidnapped Elena and her children, and forcibly took them to live with him in Aguanato, Mexico. *Id.* at ¶ 21. Odilon sexually assaulted Elena. *Id.* Elena attempted to return to her father's house after her kidnapping, but her family did not accept her. *Id.* at ¶ 22. After that, Elena remained with Odilon. *Id.* A certified Mexican marriage certificate indicates that Elena and Odilon were married on August 14, 1950. *Id.* at ¶ 23. Elena had three children with Odilon, who were all born in Mexico between 1951 to 1960. *Id.* at ¶ 25, 26, 27. Elena's children's birth certificates list Elena and Odilon as the parents, and list them as married. *Id.*

---

[1] 8 U.S.C. section 1252(b)(5)(B) states, "[i]f the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of title 28, United States Code."

On August 1, 1951, Sara was born to Elena and Odilon, in Mexico. *Id.* at ¶ 25. At some point thereafter, while Elena was still breastfeeding Sara, Elena began traveling to the United States to work. *Id.* at ¶ 29. During this period of time, Elena still resided in Mexico but traveled intermittently to United States, for an unspecified amount of time until Sara was a teenager. *Id.* at ¶ 30.

In May 1968, when Sara was seventeen years old, she gave birth to Guillermo, the Petitioner. *Id.* at ¶ 36. Sara was not married to Guillermo's father, and he is not listed on his birth certificate. *Id.* at ¶ 37. In 1979, Sara submitted an immigrant visa application on behalf of herself and Petitioner in which she listed her place of residence from 1967 until 1977 as Mexico. *Id.* at ¶¶ 40, 41. On January 12, 1979, Petitioner became a lawful permanent resident of the United States. *Id.* at ¶ 42.

## II.   LEGAL STANDARD

Under Federal Rules of Civil Procedure Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Substantive law determines "which facts are critical and which facts are relevant." *Id.* Further, a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation omitted). When ruling on a summary judgment motion, the court must view "the inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Further, once the moving

party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586 (citations omitted). Thus, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony, bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible…." *In re Oracle Corp. Sec., Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010).

**III.    DISCUSSION**

    **a.  Genuine Dispute of Material Fact**

Here, as an initial matter, Petitioner failed to follow the Court's Chambers Rules, as Petitioner did not respond to Respondent's Statement of Undisputed Facts. *See* Honorable Linda Lopez's United States District Judge Civil Chambers Rules. Specifically, Civil Chambers Rule 3(F) requires the opposing party to respond to the "separate statement" indicating whether a fact is disputed or undisputed. *Id.* at 3(F). Failing to indicate whether a fact is disputed or undisputed allows the Court to consider the fact as undisputed. *Id.* ("If

any opposing party fails to indicate whether a fact is disputed or undisputed, the Court will consider the fact undisputed."). Accordingly, in light of Petitioner's failure to comply with the Court's Chamber Rules, the Court deems admitted all facts in Respondent's Statement of Undisputed Facts. *See also Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's] statement."); *Brito v. Barr*, No. 18cv97-KJM-DB, 2020 WL 4003824 at *6 (E.D. Cal. July 15, 2020) ("It is the court's prerogative to treat such a failure to respond as an outright admission") (internal citation omitted).

In resolving the instant Motion for Summary Judgment, the question before this Court is whether, crediting Petitioner's evidence and drawing all reasonable inferences in his favor, a reasonable trier of fact could find that he had established the elements of his citizenship claim by a preponderance of the evidence. *Giha v. Garland*, 12 F.4th 922, 932 (9th Cir. 2021). Based on the record and undisputed facts before the Court, the Court finds that there is no genuine question of material fact regarding Petitioner's citizenship for the reasons set forth below.

### b. Petitioner's Citizenship

Although Petitioner was born in Mexico (ECF No. 18-2 at ¶ 1), he claims to have acquired United States citizenship at birth from his mother Sara, who he claims acquired United States citizenship at birth from her mother, Elena. ECF No. 18-1 at 2; ECF No. 21 at 2. "There are 'two sources of citizenship, and two only: birth and naturalization.'" *Miller v. Albright*, 523 U.S. 420, 423 (1998) (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)). "Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress." 523 U.S. at 423. The appropriate statute to apply in a citizenship claim is "the statute that was in effect 'at the time the critical events giving rise to the eligibility occurred.'" *Giha*, 12 F.4th at 932 (quoting *Minasyan v. Gonzales*, 401 F.3d 1069, 1075 (9th Cir. 2005)).

Here, the critical event in which Petitioner relies on is his mother Sara's naturalization. The naturalization statute in effect when Sara was born governs. Sara was born in 1951 (ECF No. 18-2 at ¶ 25); thus, The Nationality Act of 1940 is the appropriate statute. The applicable section depends on whether Sara was born in or out of wedlock. If Elena was married when Sara was born, section 201(g) applies (8 U.S.C. § 601(g)) (repealed)), and if Elena was not married when Sara was born, section 205 applies (8 U.S.C. § 605 (repealed)). After demonstrating Sara's naturalization, Petitioner must prove his own citizenship. Petitioner's citizenship claim is also determined by the statute in effect at the time of his birth, in 1968, which is the Immigration and Nationality Act section 309(c). ECF No. 18-2 at ¶ 36; 8 U.S.C. § 1409(c).[2] The Immigration and Nationality Act section 309(c) applies to nationality cases where the mother is a citizen, and the child is born out of wedlock. 8 U.S.C. § 1409(c).

### i. Burden of Proof in Removal Proceedings

The Ninth Circuit has established a burden-shifting framework for removal proceedings:

> The government bears the ultimate burden of establishing all facts supporting deportability by clear, unequivocal, and convincing evidence. When, however, the government offers evidence of foreign birth, a rebuttable presumption of alienage arises, shifting the burden to the alleged citizen to prove citizenship. Upon production by a petitioner of substantial credible evidence of the citizenship claim, this presumption bursts and the burden shifts back to the government to prove the respondent removable by clear and convincing evidence.

---

[2] 8 U.S.C. section 1409(c) states, "a person born, after December 23, 1952, outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year."

*Mondaca-Vega v. Lynch*, 808 F.3d 413, 419 (9th Cir. 2015) (internal quotations and citations omitted); *see also Giha,* 12 F.4th at 932 (the party opposing removal bears the burden of proving citizenship by a preponderance of the evidence).

Here, Respondent and Petitioner both agree that Petitioner "bears the burden to present substantial credible evidence of citizenship by proving to this Court, by a preponderance of the evidence, that he is a citizen" because Petitioner was born in Mexico. ECF No. 18-1 at 8, 14; ECF No. 21 at 5. If Petitioner satisfies his burden, then Respondent must prove that Petitioner "is removable by clear and convincing evidence." *Mondaca-Vega*, 808 F.3d at 419.

### ii. Sara's Citizenship Under Former 8 U.S.C. § 605

Respondent and Petitioner disagree on whether former 8 U.S.C. section 601(g) or section 605 applies to Petitioner's citizenship claim because they disagree on whether Elena was married when Sara was born. If Elena was married when Sara was born, former 8 U.S.C. § 601(g) applies, and if Elena was not married when Sara was born, former 8 U.S.C. § 605 applies.

Respondent argues that "all documentary evidence and deposition testimony confirm[] that Elena was legally married to Sara's father, Odilon, when Sara was born." ECF No. 18-1 at 16. Respondent further argues that "[a]s a result, former § 605 does not apply to Guillermo's claim that Sara acquired U.S. citizenship from Elena, and instead former § 601(g) applies requiring Guillermo to show Elena satisfied the 10-year U.S. residence requirement." *Id*. Petitioner argues that former section 605 is the applicable statute because "[b]ased on the testimonial evidence provided by Guillermo and his family . . . Elena was not married at the time of Sara's birth." ECF No. 21 at 7. "For that reason, the Court should apply former § 605 to Guillermo's claim that Sara acquired U.S. citizenship from Elena, rather than the former § 601(g), requiring Guillermo to show Elena satisfied the 10-year U.S. residence requirement." *Id.*

The Court finds that former 8 U.S.C. § 605 does not apply in this case because the evidence supports that Elena was married to Odilon when Sara was born. First, it is

undisputed that a certified copy of a marriage certificate indicates that Elena and Odilon were married on August 14, 1950. ECF No. 18-2 at ¶ 23; ECF No. 18-16. It is also undisputed that Sara was born on August 1, 1951. ECF No.18-2 at ¶ 25. Thus, the certificate indicates the couple was married prior to Sara's birth. Additionally, it is undisputed that the documentary evidence of all three birth certificates of Elena and Odilon's children state that the two were married. *Id.* at ¶¶ 25, 26, 27. Further, it is undisputed that Odilon's death certificate indicates he was married at the time of his death (*Id.* at ¶ 28), and that Elena stated she was married on a petition to classify status of alien relative she submitted on behalf of Sara in 1978. *Id.* at ¶ 33. The aforementioned evidence demonstrates that Elena and Odilon were married at the time of Sara's birth. Further, Petitioner fails to dispute or provide contrary evidence showing that Elena and Odilon were never married.

Petitioner relies on the testimonial evidence provided by his family in support of his argument that Elena and Odilon were never married. Petitioner argues:

> Elena's first child, Maria, testified that she witnessed Odilon kidnap Elena. SUF 48. She also never witnessed a marriage ceremony. SUF 48. Elena's second child with Odilon, Aurora, testified that she did not know if her parents were married. SUF 49. Odilon Jr., Elena's third child, stated that he did not recall if his parents ever talked about being married. SUF 51. Maricela Gutierrez Solorio, Aurora's daughter, testified that Elena mentioned being married to Odilon against her will. SUF 24.

ECF No. 21 at 8. However, even when the evidence is taken in the light most favorable to Petitioner (*Matsushita Elec. Indus. Co.*, 475 U.S. at 587), the evidence, at best, demonstrates that either his family was unaware of the marriage or that Elena was forced to marry. Notably, the testimonial evidence does not prove that Elena and Odilon were not married. Even assuming as true that Elena was forced to marry Odilon, Petitioner fails to provide any evidence or controlling law to support that the marriage was legally void or nullified.

In sum, Petitioner's evidence is insufficient to permit a reasonable trier of fact, by a preponderance of evidence, to conclude that Elena was not married at the time of Sara's

birth. Therefore, Petitioner's claim that Sara acquired U.S. citizenship at birth under former § 605 fails. Because former § 605 does not apply in this case, the Court will next analyze whether Petitioner sufficiently demonstrates that there is a genuine question material fact regarding whether he acquired citizenship under former section 601(g).

### iii.  Sara's Citizenship Under Former 8 U.S.C. § 601(g)

The pertinent portion of former 8 U.S.C. section 601(g) states that the following shall be a national and citizen of the United States:

> A person born outside the United States and its outlying possessions of parents one of whom is a citizen of the United States who, prior to the birth of such person, has had ten years' residence in the United States or one of its outlying possessions, at least five of which were after attaining the age of sixteen years, the other being an alien.

8 U.S.C. 601(g) (repealed). Accordingly, Petitioner must sufficiently demonstrate that there is a genuine question of material fact, by a preponderance of the evidence (*Giha*, 12 F.4th at 932), that Elena resided in the United States for a minimum of ten years and that five of those years occurred after she turned sixteen. "The place of general abode shall be deemed the place of residence." 8 U.S.C. § 504 (1940) (repealed).

Respondent argues "all documentary evidence and deposition testimony confirm[] that Guillermo has failed to show that Elena satisfied the ten year U.S. residence requirement with five of those ten years of residence attained after Elena turned 16 years old." ECF No. 18-1 at 19. Petitioner argues that he has met his burden "in showing by a preponderance of the evidence that Sara acquired U.S. citizenship from Elena at birth." ECF No. 21 at 9.

Respondent argues that the Court should exclude as inadmissible hearsay the deposition testimony of Petitioner, Odilon Jr., Aurora, and Maricela. ECF No. 18-1 at 20. Specifically, Respondent argues that "the Court should exclude as inadmissible hearsay the deposition testimony of Guillermo, Aurora, Odilon Jr., and Maricela because they cannot have personal knowledge of Elena's residence before 1951 when all of them were born after 1951." ECF No. 18-1 at 20 (citing SUF 24, 36, 26, 27; see also Fed. R. Civ. P.

56(c)(4); Fed. R. Evidence 602, 701). Respondent also argues that "the strength of Maria's personal knowledge of events prior to 1951 is uncertain where she was eight years old at the time, and she admitted she did not know or remember specific details or facts from that time period." ECF No. 18-1 at 20 (citing SUF 14, 54; see also Fed. R. Civ. P. 56(c)(4)). Notwithstanding these objections, Respondent argues that "neither Guillermo nor any of his family members could provide exact dates or even approximate time periods of Elena's U.S. residence prior to Sara's birth in 1951 responding to most questions about her residence that they did not have knowledge of the matter." ECF No. 18-1 at 22 (citing SUF 55). In response, Petitioner contends that the disputed deposition testimony should not be excluded as inadmissible hearsay "because of its highly probative value when so few records exist of Elena's residence in the United States." ECF No. 21 at 10.

Once Respondent raised a hearsay objection as to Guillermo, Aurora, Odilon, Jr. and Maricela's deposition testimony, the burden rested on Petitioner to either show how this deposition testimony was admissible as presented or that it could be presented in an admissible form at trial. *See Lizarraga-Davis v. Transworld Sys.*, No. 18-cv-04081-BLF, 2022 WL 4485813, at *6 (N.D. Cal. Sep. 27, 2022); *Rockstrom v. Spokane Cnty.*, No. 2:18-CV-197-RMP, 2019 WL 5256920, at *1 (E.D. Wash. Apr. 24, 2019) ("If a party objects to evidence presented on a motion for summary judgment, it functions much like an objection at trial; that is, the burden is on the proponent to show that the evidence is admissible as presented or can be presented in an admissible form."). Here, Petitioner has done neither. Indeed, Petitioner's conclusory argument the deposition testimony should not be excluded simply because it is "highly probative" in nature is unsupported by citations to any legal authority. A proper exercise of judicial restraint mandates that the Court not "manufacture arguments" on Petitioner's behalf. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994).

Even assuming that the disputed testimony could be presented in an admissible form at trial, it fails to raise a genuine issue of material fact as to whether Elena resided in the United States for a period of ten years under the requirements of former 8 U.S.C. § 601(g) for the reasons set forth below. First, it is undisputed that Elena was born in Merced,

| | |
|---|---|
| 1 | California on June 26, 1923. ECF No. 18-2 at ¶ 7. It is also undisputed that Elena signed |
| 2 | and affirmed under oath on an Affidavit of Support in 1979 that she resided in Mexico |
| 3 | from 1928 to 1965. *Id.* at ¶ 32. The Affidavit of Support was submitted to United States |
| 4 | immigration authorities in 1979 when she petitioned for her children to immigrate to the |
| 5 | United States. *Id.* The Affidavit also indicates Elena resided in the United States from 1923 |
| 6 | to 1928. ECF No. 18-13. Petitioner's argument in the Response to Respondent's Motion |
| 7 | for Summary Judgment that "[t]he Court should consider that Elena was illiterate and did |
| 8 | not speak English, based on the testimonial evidence of Guillermo and his family |
| 9 | members" is without merit. ECF No. 21 at 9. Notably, Petitioner conceded to the validity |
| 10 | of the Affidavit, as he failed to respond to the Respondent's Statement of Undisputed Facts. |
| 11 | *See* Docket; *see also Beard v. Banks*, 548 U.S. at 527. Viewing this evidence in the light |
| 12 | most favorable to Petitioner (*Matsushita Elec. Indus. Co.*, 475 U.S. at 587), Elena resided |
| 13 | in the United States for approximately five years prior to Sara's birth, not the required ten |
| 14 | years. |
| 15 | There is further undisputed evidence that Sara resided in Mexico during the period |
| 16 | indicated in the Affidavit and after Elena turned sixteen (after 1939). For example, it is |
| 17 | undisputed that Elena married her first husband before 1943 in Mexico (ECF No. 18-2 at |
| 18 | ¶ 14), and all four children with her first husband were also born in Mexico after 1943. *Id.* |
| 19 | at ¶ 15. Petitioner also concedes that "Elena did not travel by herself or with her family to |
| 20 | the United States, during her marriage to Liborio in the 1940's." *Id.* at ¶ 18. Additionally, |
| 21 | it is undisputed that Sara was born in Mexico, further corroborating that at the time of |
| 22 | Sara's birth Elena resided in Mexico. *Id.* at ¶ 25. Thus, the undisputed evidence |
| 23 | demonstrates that Elena's "general abode" was in Mexico, not in the United States, and |
| 24 | that she did not reside in the United States for a minimum of five years after her sixteenth |
| 25 | birthday. |
| 26 | Petitioner relies on a United States Census Bureau record that Petitioner claims |
| 27 | "reflects that Elena and her family lived in Oregon in 1930." ECF No. 21 at 9 (citing ECF |
| 28 | No. 18-2 at ¶ 53). Setting aside the document's authenticity and viewing this evidence in |

the light most favorable to Petitioner (*Matsushita Elec. Indus. Co.*, 475 U.S. at 587), the Census record can only prove that Elena resided in Oregon in 1930 and not that she resided within the United States for a period of ten years. Further, the census record predates Elena's sixteenth birthday, as Elena was born in 1923 and would not be sixteen until 1939, and thus does not support the required notion that she resided in the United States for at least five years after turning sixteen.

Petitioner also relies on Odilon's Jr testimonial evidence indicating that Elena's father was a Bracero for about twenty years. ECF No. 21 at 9. Petitioner argues that:

> Guillermo's family members testified that Elena went back to Mexico after her birth in the United States. She then came back to live in the United States [at] a young age while her father who worked as a bracero for years. Odilon, Jr. testified during his deposition that Elena's father worked as a bracero for about twenty years. Although Guillermo's family members could not provide specific dates regarding her residence, considering the testimony in a light most favorable to Guillermo, Elena would have accumulated enough time to satisfy the standard.

*Id.* Although it is undisputed that Elena's father was a Bracero in the United States and that Elena would join her father intermittently in the United States while he worked, Petitioner concedes that this period of time was "unspecified." ECF No. 18-2 at ¶ 13. It would be a significant inferential leap to find that Elena's father worked as Bracero in the United States for twenty years and that Elena resided with her father during this period of time. The evidence that Petitioner submits "establishes only that this set of events could conceivably have occurred; it does not give rise to a reasonable inference that it did in fact occur." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1061 (9th Cir. 2011). "To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Id.*; <u>O.S.C. Corp. v. Apple Comput., Inc.</u>, 792 F.2d 1464, 1466-67 (9th Cir. 1986) (the court must "scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit a finding in favor of the opposing party *based on more than mere speculation, conjecture, or fantasy*") (internal quotation marks omitted) (emphasis added).

Thus, Petitioner has failed to present sufficient evidence to permit a reasonable trier of fact to find, by a preponderance of the evidence, that Elena resided in the United States for a period of ten years, much less that she resided at least five years in the United States after her sixteenth birthday. Accordingly, Petitioner has failed to present sufficient evidence to permit a reasonable trier of fact to find, by a preponderance of the evidence, that his mother Sara acquired citizenship from her mother Elena at birth under former 8 U.S.C. § 605(g). Because Petitioner's citizenship claim hinges on the citizenship of his mother, Petitioner has also failed to present sufficient evidence to permit a reasonable trier of fact to find, by preponderance of the evidence, that he acquired citizenship at birth from Sara pursuant to 8 U.S.C. section 1409(c). In sum, based on the record and undisputed facts before the Court, the Court finds that there is no genuine issue of material fact regarding Petitioner's citizenship.

## IV. CONCLUSION

For the reasons set forth herein, the Court **GRANTS** Respondent's Motion for Summary Judgment. Respondent shall submit a proposed judgment within **fourteen (14) days** of this Order.

**IT IS SO ORDERED**.

Dated: February 7, 2023

_____
Honorable Linda Lopez
United States District Judge